Brian LYNN, Appellant

v.

NATIONWIDE INSURANCE
COMPANY and Terra M.
Lynn, Appellees.

Superior Court of Pennsylvania.

Argued April 2, 2013.
Filed May 1, 2013.

Gary M. Davis, Pittsburgh, for appellant.

Erin J. Dolfi, Pittsburgh, for Nationwide, appellee.

Susan Frietsche, Pittsburgh, amicus curiae.

BEFORE: BOWES, DONOHUE and MUNDY, JJ.

OPINION BY DONOHUE, J.:

Appellant, Brian Lynn ("Lynn"), appeals from the trial court's grant of summary judgment in favor of Appellee, Nationwide Insurance Company ("Nationwide"). This case presents an issue of first impression, specifically an interpretation of the anti-abuse provisions of the Unfair Insurance Practices Act ("UIPA"), 40 P.S. § 1171.5(a)(14), including in particular subsection 1171.5(a)(14)(i)(D), added in 2006. For the reasons that follow, we conclude that the trial court's interpretation of this provision of the UIPA was flawed, and accordingly we reverse the order granting summary judgment.[1]

The parties do not dispute the basic factual and procedural background of the case. On October 27, 2009, Lynn's estranged wife, Terra Lynn ("Terra"), telephoned the Warren Carr Insurance Agency (the "Carr Agency"), the insurance agency providing homeowners insurance on the marital residence, and informed Warren Carr, its principal, that she wanted to cancel the homeowners policy (the "Policy") covering the home. The next day, Bonita Rush, the agency's office manager, called Terra and advised her that a written confirmation would be required to cancel the Policy. On October 30, 2009,

---

1. In reaching our decision, we have also reviewed and considered a brief submitted by the *Amici Curiae* Women's Law Project.

Terra sent an email from the address of *brianterra48@aol.com*, stating, "I want my homeowners policy cancelled. Sincerely, Brian Lynn." The parties do not dispute that this email address was created by Terra and that she sent this email without Lynn's knowledge or assent.

On November 1, 2009, Terra drugged the couple's children and attempted to burn down the marital residence with her and the children inside. She left a suicide note to Lynn stating, "Have a great fucking life knowing the kids will always be with me now. I leave you absolutely nothing." Luckily, her murder-suicide attempt was foiled and she and the children escaped serious injuries. Terra was arrested and subsequently pled guilty to criminal charges, including arson. Lynn now has custody of their children.

On or about November 3, 2009, Lynn went to the Carr Agency to inquire regarding insurance coverage for damage to the marital home and its contents. At that time, Lynn was informed that the Policy had been cancelled. On November 10, 2009, the mortgagee of the premises filed a claim for damages with Nationwide, and six days later Lynn filed his own claim. Lynn began preparation of an inventory of items in the home at the time of the fire. Lynn and Nationwide disagree as to whether, and/or the extent to which, this inventory contains items not damaged in the fire or not in the home at the time of the fire.

Based upon the purported cancellation of the Policy, Nationwide denied Lynn's claim. On June 30, 2010, Lynn filed a lawsuit against Nationwide (and Terra) in which he alleges that Nationwide breached the terms of the homeowners' policy and did so in bad faith. After discovery, Nationwide filed a motion for summary judg-

ment contending, *inter alia*, that the Policy was properly cancelled in accordance with its terms, that all claims were excluded from coverage under the intentional acts provision in the Policy, and that Lynn's inventory violated the concealment and fraud provisions of the Policy. Lynn filed a response to Nationwide's motion for summary judgment, denying its material contentions. In particular, Lynn argued that subsection 1171.5(a)(14)(i)(D) of the UIPA precludes the entry of summary judgment in this case. Subsection 1171.5(a)(14)(i)(D) prohibits an insurance company from "refusing to pay an insured for loses arising out of abuse to that insured under a property ... insurance policy or contract ... if the loss is caused by the intentional act of another insured...." 40 P.S. § 1171.5(a)(14)(i)(D).

On September 7, 2012, the trial court issued a memorandum and order granting Nationwide's motion for summary judgment with respect to the first two counts of Lynn's complaint.[2] The text of the trial court's memorandum reads as follows:

Pending before me is [Nationwide's] Motion for Summary Judgment, which seeks the dismissal of the breach of contract and bad faith counts of the Complaint. The Complaint was filed after Nationwide denied [Lynn's] claim for insurance benefits following a fire intentionally set by his wife. [Lynn] appears to concede the intentional acts exclusion in the [Policy] would apply, but for the [UIPA]. Specifically, [Lynn] relies on section 1171.5(a)(14)(i), which prohibits an insurance company from denying a claim such as his '*because* the insured ... is a victim of abuse....' (Emphasis added). [Lynn], who argues his wife set the fire as part of a pattern

---

2. Count One of the Complaint states a claim for breach of contract against Nationwide and

Count Two states a claim for insurance bad faith pursuant to 42 Pa.C.S.A. § 8371.

of abuse directed at him, interprets the word 'because' in paragraph (14)(i) to mean 'if,' when it actually should be interpreted to mean 'for the reason that.' This becomes apparent upon reading subparagraphs 14(ii)(B) and 14(iii). The former provides that nothing in paragraph 14 'shall be construed as ... requiring [an insurance company] to provide benefits or coverage for losses incurred solely because the insured ... is a victim of abuse.' The latter provides that an insurance company does not violate paragraph 14 'if any action taken is permissible by law and applies to the same extent to all ... insured without regard to whether an ... insured is a victim of abuse.' Thus, the Act prohibits *discriminating* against a benefits claimant on the basis that the claimant was a victim of abuse as defined by the Act. Because [Lynn] does not even allege such discrimination, I enter the follow [order granting summary judgment].

Trial Court Memorandum, 9/7/12, at 1–2 (emphasis in original). Because the trial court's order did not dispose of Lynn's claims against Terra, it was not a final order for purposes of appeal. Pa.R.A.P. 341(c). Lynn filed a motion pursuant to Pa.R.A.P. 341(c), requesting that the trial court amend its order to designate it as a final order because an immediate appeal would facilitate final resolution of the entire case. On September 14, 2012, the trial court amended its order as requested, and this appeal followed.

On appeal, Lynn raises the following issues for our consideration and determination:

1. Where the record shows a pattern of abuse, including unauthorized purported policy cancellation through forged communications and an attempt to kill the victim's children and spouse by the spouse deliberately setting fire to the insured property with them in it, can an [i]nsurer properly deny the innocent victim spouse's claim for recovery of property damage consistent with the provisions of [UIPA], and specifically 40 P.S. § 1171.5(a)(14)(i)(D).

2. Is an attempt to cancel a policy effective when it is part of a pattern of abuse, not authorized by the abused insured victim, based on a forged communication to the [i]nsurer and contrary to the policy provisions concerning cancellation by the insured.

3. Where an [i]nsurer denies the claim of an innocent victim of abuse in violation of the provisions of the UIPA, and, in addition, supports its denial based on a forged and inadequate communication to the insurance agent, are material issues of fact presented precluding the award of summary judgment in favor of the [i]nsurer on its bad faith claim.

4. Are there material facts at issue so as to preclude summary judgment regarding whether [Lynn] intentionally concealed or misrepresented facts to Nationwide regarding his contents claim so as to preclude coverage.

5. Are there material facts at issue, so as to preclude summary judgment regarding whether personal property claimed was abandoned by the insured.

Lynn's Brief at 4–5.

Our standard of review when considered an appeal from the grant of summary judgment is as follows:

As has been oft declared by this Court, 'summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine

issue of material fact and that the moving party is entitled to judgment as a matter of law.' *Atcovitz v. Gulph Mills Tennis Club, Inc.,* 571 Pa. 580, 812 A.2d 1218, 1221 (2002); Pa.R.C.P. No. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. *Toy v. Metropolitan Life Ins. Co.,* 593 Pa. 20, 928 A.2d 186, 195 (2007). In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment 'where the right to such judgment is clear and free from all doubt.' *Id.* On appellate review, then,

> an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is de novo. This means we need not defer to the determinations made by the lower tribunals.

*Weaver v. Lancaster Newspapers, Inc.,* 592 Pa. 458, 926 A.2d 899, 902–03 (2007) (internal citations omitted). To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record. *Id.* at 903.

*Summers v. Certainteed Corp.,* 606 Pa. 294, 307, 997 A.2d 1152, 1159 (2010).

With respect to Lynn's first issue on appeal, Nationwide denied Lynn's claim in part based upon an "intentional acts" exclusion in the Policy that denies coverage when the loss results from an intentional act "committed by or at the direction of an insured," including criminal acts.[3] According to Nationwide, "[b]ecause it is undisputed that Terra Lynn was an insured and that she intentionally set fire to the house, this exclusion applies to [Lynn's] claimed damages." Nationwide's Brief at 8. Lynn does not dispute that his losses are the result of the intentional actions of an insured (Terra). Lynn's Brief at 16. Instead, Lynn argues that because he is a victim of Terra's abuse, under section 1171.5(a)(14) of the UIPA, including in particular subsection 1171.5(a)(14)(i)(D), Nationwide may not rely on the intentional acts exclusion in the Policy to deny his claim. *Id.* at 16–18.

In 1996, the Pennsylvania legislature amended section 1171.5(a) of the UIPA to provide protection from discrimination by insurance companies against victims of domestic violence. The new legislation added section 14, which provided as follows:

**§ 1171.5. Unfair methods of competition and unfair or deceptive acts or practices defined**

(a) 'Unfair methods of competition' and 'unfair or deceptive acts or practices' in the business of insurance means:

\* \* \*

**3.** Section I of the Policy provides in relevant part as follows:

    I. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.

\* \* \*

g) Intentional Acts, meaning loss resulting from an act committed by or at the

direction of an **insured** that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all **insureds.**

(14)(i) Taking any of the following actions because the insured or applicant for an insurance policy or insurance contract is a victim of abuse:

(A) Denying, refusing to issue, refusing to renew, refusing to reissue or cancelling or terminating an insurance policy or insurance contract or restricting coverage under an insurance policy or insurance contract.

(B) Adding a surcharge, applying a rating factor or using any other underwriting standard or practice which adversely takes into account a history or status of abuse.

(C) Excluding or limiting benefits or coverage under an insurance policy or insurance contract for losses incurred.

(ii) Nothing in this paragraph shall be construed as:

(A) requiring that a person issue, renew or reissue an insurance policy or insurance contract solely because the insured or applicant is a victim of abuse; or

(B) requiring a person to provide benefits or coverage for losses incurred solely because the insured or applicant is a victim of abuse.

(ii.1) Payment of a claim pursuant to subparagraph (i)(D) shall constitute payment as to all other insureds under the policy.

(iii) A person shall not be in violation of this paragraph if any action taken is permissible by law and applies to the same extent to all applicants and insureds without regard to whether an applicant or insured is a victim of abuse.

40 P.S. § 1171.5(a)(14).

In 1997, this Court decided *Kundahl v. Erie Ins. Group*, 703 A.2d 542 (Pa.Super.1997), a case in which Erie had issued automobile and homeowners insurance policies to a husband and wife, Christine and Edward Kundahl. *Id.* at 543. The Kundahls eventually developed severe marital conflicts, and in July 1991, Edward Kundahl intentionally set fire to the Kundahls' house. *Id.* The fire destroyed a substantial portion of the residence as well as Christine Kundahl's automobile. *Id.* Christine Kundahl, as a co-insured, requested payment of insurance proceeds from Erie under both policies. *Id.* Erie denied coverage based upon intentional acts exclusion provisions in both policies, on the grounds that Mrs. Kundahl's losses were the direct result of the intentional acts of another named insured under the polices (*i.e.*, her husband). *Id.*

This Court reversed the trial court's entry of judgment in favor of Christine Kundahl and directed that judgment instead be entered in favor of Erie. *Id.* at 545. We concluded that the language of the intentional acts exclusions clearly provided that the Kundahl's interests under the policies were joint rather than several, and that as a result, "if any one [insured] violates the policy, coverage must be denied to all insureds." *Id.* at 545. We apparently determined that the newly enacted section 1171.5(a)(14) of the UIPA provided no protection for Christine Kundahl, even as a victim of domestic violence, as we made no reference to that statutory provision in our opinion in *Kundahl.* Instead, we called upon the legislature to remediate the problem of an abusive spouse's intentional actions victimizing an innocent co-insured:

We do sympathize with Mrs. Kundahl's plight. Her home and car are lost without the possibility of recovery. However, we cannot permit our sympathy to cloud the plain language of both policies. Nor can we force insurance companies to insert language in every policy they

write to provide coverage for all innocent insureds. Such action is more properly left to our legislature. We, therefore, call upon the legislature to address this problem so that victimized spouses are no longer faced with the twin evils of destruction and destitution.

*Id.*

Although initial legislative efforts did not come to fruition, in 2005 Senator Patricia Vance introduced a bill in the Pennsylvania Senate to address the *Kundahl* issue. Pa.S.Res. 363 of 2005. Her co-sponsorship memorandum for the bill discussed the *Kundahl* case (among others) in some detail and stated that the goal of the proposed legislation was "to create a statutory prohibition against an insurance company's refusal to pay a homeowner's or property/casualty claim arising out of abuse to an innocent claimant when an abusive spouse caused the property damage." Co–Sponsorship Memorandum, S.B. 363, January 20, 2005. Representative George Kenney introduced the identical legislation in the Pennsylvania House of Representatives. Pa.H.Res. 1632 of 2005. This House bill was enacted into law in 2006 and was codified in part at 40 P.S. § 1171.5(a)(14)(i)(D):

> (D) With respect to a policy of a private passenger automobile, a policy covering owner-occupied private residential property or a policy covering personal property of individuals, refusing to pay an insured for losses arising out of abuse to that insured under a property and casualty insurance policy or contract to the extent of the insured's legal interest in the covered property if the loss is caused by the intentional act of another

insured or using other exclusions or limitations which the commissioner has determined unreasonably restrict the ability of victims of abuse to be indemnified for such losses. When an insured submits a claim for losses pursuant to this subsection, the insurer shall provide to the insured a notice stating:

> (I) that the insurer cannot refuse to pay a claim without conducting a reasonable investigation;

> (II) that such investigation may include or result in contact with other insureds;

> (III) that at the request of the insured, the insurer will not disclose the location of the insured to the other insureds or third parties as part of the investigation;

> (IV) that the insurer will notify the insured at least fourteen days prior to instituting any legal action against the insured alleged to have caused the loss;

> (V) that, after an insurer has paid a loss as a result of the claim, the insurer may nonrenew coverage or impose a surcharge as to the insured alleged to have caused the loss as long as the nonrenewal or surcharge imposition is not done prior to the later of six months following payment of the claim or the policy's renewal date; and

> (VI) the national domestic violence hotline number.

40 P.S. § 1171.5(a)(14)(i)(D). The 2006 legislation also amended the definition of "abuse" in section 1171.3 of the original 1996 legislation[4] to include "attempting to

---

4. The 1996 legislation adopted the definition of "abuse" in 23 Pa.C.S.A. § 6102(a), which provides as follows:

> 'Abuse.' The occurrence of one or more of the following acts between family or household members, sexual or intimate partners

or persons who share biological parenthood:

> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual as-

cause or intentionally, knowingly or recklessly causing damage to property so as to intimidate or attempt to control the behavior of another person covered under 23 Pa.C.S. Ch. 61 (relating to protection from abuse)." 40 P.S. § 1171.3.

In making its decision in the present case, the trial court did not refer to subsection 1171.5(a)(14)(i)(D). Instead, it focused exclusively on the introductory language in section 1171.5(a)(14)(i), and in particular on the definition of the word "because." The introductory language to section 1171.5(a)(14)(i) states that an insurance company is prohibited from denying a claim *"because* the insured ... is a victim of abuse...."* Trial Court Opinion, 9/7/12, at 1–2 (emphasis in original). According to the trial court, the proper definition for the word "because" here is "for the reason that." Using the trial court's chosen definition of "because," section 1171.5(a)(14) prohibits an insurance company from denying a claim if it does so **because** (for the reason that) the claimant is a victim of abuse, *i.e.*, if the insurance company intentionally discriminates against a victim of abuse **because** he/she is a victim of abuse. *Id.* Under this interpretation, Nationwide did not deny Lynn's claim as an act of discrimination against a victim of abuse, but rather merely based upon a routine application of the intentional acts exclusion in the Policy.

In reviewing the trial court's interpretation of the anti-abuse provisions of the UIPA, "our standard of review is *de novo* and [our] scope of review is plenary." *In*

*re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, 1261 (2006). "[T]he objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature." *Bayada Nurses v. Dept. of Labor and Indus.,* 607 Pa. 527, 552, 8 A.3d 866, 880 (2010) (citing 1 Pa.C.S. § 1921(a)). Generally, the best indication of the General Assembly's intent is the plain language of the statute. *Allstate Life Ins. Co. v. Commonwealth,* —— Pa. ——, ——, 52 A.3d 1077, 1080 (2012). Courts are required, if possible, to give effect to each provision or subsection of the statute. 1 Pa.C.S.A. § 1921(a). We must assume that the legislature intended for the entire statute to be effective and certain, and conversely did not intend an absurd or unreasonable result. 1 Pa. C.S.A. § 1922. For this reason, we may consider the practical consequences of a particular interpretation. *C.R.F. v. S.E.F.,* 45 A.3d 441, 444 (Pa.Super.2012) (citing *Commonwealth v. Diakatos,* 708 A.2d 510, 512 (Pa.Super.1998)).

■ With these principles in mind, in our view the trial court's interpretation of the relevant statutory language in this case was in error, as it completely ignores the plain, unambiguous language of subsection 1171.5(a)(14)(i)(D). This language clearly demonstrates the legislature's intention *to prohibit the denial of claims of innocent co-insureds where the loss was caused by the intentional acts of another insured.* Subsection (D) states that an insurance company is prohibited from "re-

---

sault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
(2) Placing another in reasonable fear of imminent serious bodily injury.
(3) The infliction of false imprisonment pursuant to 18 Pa.C.S. § 2903 (relating to false imprisonment).
(4) Physically or sexually abusing minor children, including such terms as defined

in Chapter 63 (relating to child protective services).
(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury....

23 Pa.C.S.A. § 6102(a).

fusing to pay an insured for losses arising out of abuse to that insured . . . if the loss is caused by the intentional act of another insured. . . ." *Id.* The trial court's interpretation, in stark contrast to the legislative intent, essentially guarantees that the claims of innocent co-insureds will **never** be paid—as the insurance company's denials of such claims will merely involve the application of the policy's intentional acts exclusion (**as it would with any other policyholder**), rather than an attempt to engage in discrimination against a victim of abuse. Regardless of the definition of the word "because" in the introductory language to section 1171.5(a)(14)(i), the trial court's interpretation cannot stand, since the provision as a whole (including subsection (D)) cannot be read to permit an insurance company to do precisely what the legislature prohibited an insurance company from doing, *i.e.,* deny the claim of an innocent co-insured based upon intentional acts of abuse by another insured.

The current structure of section 1171.5(a)(14)(i), after the 2006 amendment adding subsection (D), highlights the trial court's misunderstanding of the provision as a whole. Subsections (A), (B), and (C) all prohibit specific acts of discrimination against victims of abuse, including, for example, refusing to issue or renew a policy, adding surcharges to the cost of a policy, or excluding or limiting the benefits available under a policy. The introductory language to these subsections makes clear that the prohibitions are in place to protect victims of abuse from acts of discrimination by the insurance company in its general treatment of such insureds, *e.g.,* in connection with a policy's issuance, its costs, and/or its available terms of coverage. Subsection (D), in significant contrast, governs the insurance company's acts during its processing of a specific claim on an existing policy—providing that the insurance company may not deny the claim of an innocent co-insured who is the victim of an intentional act of abuse by another insured. Read in context and taking legislative intent in proper consideration, the prohibitions in subsection (D), unlike those of subsections (A)—(C), stand on their own and are not limited or further defined by the introductory language to the section.

We likewise disagree with the trial court's view that sections 1171.5(a)(14)(ii)(B) and (iii) support its interpretation. Section (14)(ii)(B) states that nothing in section (14) "shall be construed as . . . requiring [an insurance company] to provide benefits or coverage for losses incurred solely because the insured . . . is a victim of abuse." 40 P.S. § 1171.5(a)(14)(ii)(B). Section (14)(iii) provides that an insurance company does not violate paragraph 14 "if any action taken is permissible by law and applies to the same extent to all . . . insured without regard to whether an . . . insured is a victim of abuse." 40 P.S. § 1171.5(a)(14)(iii). These two provisions, again read in the context of section 14 as a whole, connote only that victims of abuse are not automatically entitled to payment of insurance claims, regardless of any surrounding circumstances. The legislative history reflects that section (ii)(B) was included to allay any concern "that this legislation would create a special class of insureds who would be automatically covered solely because they are victims of abuse. . . . [I]f you happened to have been a victim of domestic violence in the past and you have some injury that is totally unrelated to this, you are not automatically covered if the company never pays for that injury." PA.H.R. LEGIS. JOURNAL, 179 Sess. 70, at 2042–43 (1995). Importantly, subsection (ii)(B) was "not intended to diminish the rule which states that insurance companies cannot base their decisions to deny cover-

age on the basis of a history of abuse or evidence of abuse." *Id.* at 2043. Subsection (iii) merely clarifies "the legal standard which the insurer must meet." *Id.*

In its motion for summary judgment, Nationwide does not contest that Lynn has introduced into the record sufficient evidence to create a material issue of fact regarding the existence of "abuse" by another insured (Terra) in this case, as that term is defined in section 1171.3 of the UIPA.[5] Accordingly, subsection (a)(14)(i)(D) of the UIPA would prohibit Nationwide from denying Lynn's claim based upon application of the intentional acts exclusion in the Policy. As a result, the trial court's entry of summary judgment for Nationwide on this basis was error.

■ Although the trial court did not address Lynn's remaining issues on appeal, we will do so herein because we may affirm a trial court's ruling on any basis supported by the record on appeal. *See, e.g., C.B. ex rel. R.R.M. v. Commonwealth, Dept. of Public Welfare,* 567 Pa. 141, 143 n. 1, 786 A.2d 176, 178 n. 1 (2001). Lynn's second and third issues on appeal dispute Nationwide's contention that the Policy had been cancelled prior to the fire loss at issue. According to Nationwide, Terra Lynn successfully cancelled the Policy before the fire, and thus no contract of insurance existed with Lynn on which it is required to pay any benefits. Nationwide's Brief at 8.

For several reasons, we disagree with Nationwide's contention that it is entitled to summary judgment on Lynn's claim because the Policy was cancelled. First, for the reasons discussed hereinabove, subsection 1171.5(a)(14)(i)(D) precludes the entry of summary judgment on this issue, since all of the acts on which Nationwide relies were the intentional acts of Terra. Subsection (D) prohibits Nationwide from refusing to pay Lynn's claim if his loss was "caused by the intentional act of another insured." 40 P.S. § 1171.5(a)(14)(i)(D). As alleged in his Complaint, argued in his appellate brief, and supported by sufficient evidence of record to create a material issue of fact on the issue, Terra's attempts to cancel their homeowners policy was part of a pattern of abuse towards him that is responsible for his losses currently at issue. Complaint, ¶ 10; Lynn's Brief at 22–23. Because the attempts to cancel the policy involved the intentional acts of another insured under the Policy, *i.e.,* Terra's call and email to the Carr Agency, pursuant to subsection 1171.5(a)(14)(i)(D), Nationwide cannot refuse to pay Lynn's claim on this basis.

■ Second, when an insurance company pleads cancellation to avoid payment on a policy, the burden is on the insurer to prove effective cancellation prior to loss. *See, e.g., Scott v. Southwestern Mut. Fire Ass'n,* 436 Pa.Super. 242, 647 A.2d 587, 590 (1994). Where the policy includes specific conditions incident to the right to cancel, the insurance company must demonstrate strict compliance. *See, e.g., Coppola v. Insurance Placement Facility of Pennsylvania,* 386 Pa.Super. 413, 563 A.2d 134, 136 (1989).

For at least two reasons, Nationwide has not presented sufficient evidence to meet its burden of proof. As indicated

---

**5.** In its appellate brief, counsel for Nationwide suggests that the evidence of record shows that Lynn was the abusive spouse and he was in some way responsible for his wife's actions. Nationwide's Brief at 16 ("One could certainly [conclude] that [Lynn] was abuser rather than victim."). Lynn's conduct vis-a-vis his spouse is not in question in this case and forms no part of any issues presently before this Court. As a result, such argument was entirely improper and we admonish counsel for including it in Nationwide's brief.

hereinabove, to effectuate cancellation the Policy requires a named insured to either return the Policy to Nationwide or "notify[ ] us in writing of the future date cancellation is to take effect." Nationwide contends that the Policy was cancelled upon receipt by the Carr Agency on October 30, 2009 of the email from Terra from the address of *brianterra48@aol.com*, stating, "I want my homeowners policy cancelled. Sincerely, Brian Lynn." Nationwide's Brief at 8. This email, however, does not set forth the "future date cancellation is to take effect," and thus arguably does not comply with the "specific conditions incident to the right to cancel" set forth in the Policy. *Coppola*, 563 A.2d at 136.

Moreover, the email arguably does not express the clear and unambiguous intent of either of the insureds under the Policy. Lynn contends, and Nationwide does not contest, that he neither knew of, authorized, nor assented to sending the email. Lynn's Brief at 29. As such, the email does not express Lynn's intent to cancel the Policy. To the contrary, nothing in the record suggests that he ever held such an intention. Likewise, the email does not clearly or precisely express Terra Lynn's intention to cancel the Policy. Given the sender's address (*brianterra48@aol.com* ) and its contents ("Sincerely, Brian Lynn"), the email purports (falsely) to express only Lynn's intentions, not Terra's. Although Nationwide correctly notes that under the terms of the Policy, Terra, as a co-insured, had the authority to cancel the Policy (with or without Lynn's knowledge), the email using Lynn's forged signature arguably did not reflect her clear and unambiguous intention to do so.

■ Finally, Nationwide contends that even if the email did not effectuate a cancellation of the Policy, Terra's call to the Carr Agency on October 27, 2009, did so. In this regard, Nationwide argues that the

above-referenced writing requirement for cancellation does not apply if "some overt action" by an insured demonstrates an intent to cancel, and that Terra's telephone call constituted such an overt act. Nationwide's Brief at 10. A review of the cancellation provision in the Policy, however, demonstrates to the contrary.

## 5. CANCELLATION DURING POLICY PERIOD

Any named insured may cancel this policy at any time by returning it to us or by notifying us in writing of the future date cancellation is to take effect.

We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect.

a) When this policy has been in effect for less than 60 days and is not a renewal, we may cancel for any reason by notifying you at least 30 days before the cancellation takes effect.

b) When this policy has been in effect for 60 days or more, or at any time if it is a renewal, we may cancel only for one or more of the following reasons by notifying you at least 30 days prior to the proposed cancellation date:

(1) this policy was obtained through material misrepresentation, fraudulent statements, omissions or concealment of fact material to the acceptance of this risk or to the hazard assumed by us;

(2) there has been a substantial change or increase in hazard in the risk assumed by us subsequent to the date the policy was issued;

(3) there is a substantial increase in hazards insured against by reason of willful or negligent acts or omission by you;

(4) you have failed to pay the premium by the due date, whether pay-

able to us or to our agent or under any finance or credit plan; or

(5) for any other reason approved by the Pennsylvania Insurance Commissioner.

**This provision shall not apply if you have demonstrated by some overt act to us or our agent that you wish the policy to be cancelled.**

Delivery of such written notice by us to you at the mailing address shown in the policy or at a forwarding address shall be equivalent to mailing. Proof of mailing will be proof of notice.

When this policy is cancelled, the premium for the period from the date of cancellation to the premium payment date will be refunded. The return premium will be pro rata. If the return premium is not refunded with the notice of cancellation or when the policy is returned to us, we will refund it within a reasonable time after cancellation takes effect.

Nationwide relies on the highlighted paragraph in support of its argument that any "overt act" by an insured may effectuate a cancellation of the Policy. We disagree. The phrase "[t]his provision shall not apply" in this paragraph refers to the immediately preceding paragraph (and subparagraphs), namely the one beginning with "[w]e may cancel this policy" and describing in detail when and under what conditions **Nationwide** may cancel the Policy (and its notice obligations if it does so). As discussed hereinabove, the first paragraph (beginning with "[a]ny named insured") provides that in order for *an* **insured** to effectuate cancellation, he or she must either (1) return the Policy to Nationwide, or (2) notify Nationwide in writing of the future date of cancellation. Nothing in the highlighted paragraph indicates that it is intended to modify or eliminate these two alternative methods of cancellation in favor of a more general and

undefined "some overt act" requirement. As such, we cannot agree that Terra's telephone call to the Carr Agency, without more, effectively cancelled the Policy.

■ Lynn's fourth and fifth issues on appeal contest Nationwide's arguments to the trial court that Lynn's alleged violations of the concealment and fraud provisions of the Policy justify its denial of his insurance claim. According to Nationwide, it has no duty to pay Lynn because he "intentionally concealed or misrepresented material facts" when submitting his claim, particularly with respect to various items listed on his inventory of items damaged in the fire. Nationwide's Brief at 20–21. Based upon our review of the record on appeal, however, we agree with Lynn that the record contains sufficient evidence to create a material issue of fact to preclude the entry of summary judgment on these issues. In particular, Lynn insists that he did not provide the disputed list of damaged items to Nationwide in connection with his claim, and that Nationwide has not conclusively established that he made any misrepresentations with the intent to defraud or mislead.

Order reversed. Case remanded to the trial court for further proceedings consistent with this Opinion. Jurisdiction relinquished.