J-A20038-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ESTATE OF: CHARLES B. GRACE, DECEASED RESIDUARY TRUST OF CHARLES B. GRACE, Deceased, | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: EUGENE G. GRACE, III, EUGENE GRACE, ANDREA GRACE AND ALEXANDRA GRACE, | : : : : : | |
| Appellants | : | No. 3298 EDA 2013 |

Appeal from the Order entered on October 31, 2013
in the Court of Common Pleas of Chester County,
Civil Division, No. 1569-0115

BEFORE: FORD ELLIOTT, P.J.E., MUNDY and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED NOVEMBER 26, 2014**

Eugene G. Grace, III, Eugene Grace, Andrea Grace and Alexandra Grace (collectively "Beneficiaries"), beneficiaries under the Residuary Trust of Charles B. Grace, Deceased ("Residuary Trust"), appeal the Order denying their request to lift the stay on certain of their Objections to two Accounts of Trust filed by co-trustees Charles B. Grace, Jr. ("Charles"), BNY Mellon, N.A. ("BNY Mellon"), and Michael D.G. Grace (collectively "Co-Trustees"), and denying their request for leave to file Amended Objections to the Accounts of Trust. We affirm.

The Orphans' Court set forth the relevant factual and procedural background in its Opinion, which we adopt herein by reference. **See** Orphans' Court Opinion, 12/23/13, at 1-4.[1]

On appeal, Beneficiaries raise the following issues for our review:

1. Did the Orphans' Court err in denying Beneficiaries leave to file Amended Objections asserting claims of breach of fiduciary duty against certain [C]o-[T]rustees of the Residuary Trust [], solely in their capacity as such, which [amended] objections are within the mandatory and exclusive jurisdiction of the Orphans' Court?

2. Did the Orphans' Court err in denying Beneficiaries leave to file Amended Objections where none of the [C]o-[T]rustees claimed, and the Orphans' Court did not find, (a) prejudice; (b) that the amendment would violate a positive rule of law[;] and/or (c) that the amendment would be futile?

3. Did the Orphans' Court err in refusing to lift the stay of Objections entered by the June 21, 2013 Order which, pursuant to the [O]rder and without leave of court, continues unless and until Beneficiaries assert certain other claims in a "more" appropriate forum, or waive those claims, where the only appropriate and permitted forum for Beneficiaries' Amended Objections is the Orphans' Court?

Brief for Appellants at 7-8.

We will address Beneficiaries' first and second claims together, as they

---

[1] This Court issued a Rule to Show Cause Order requiring Beneficiaries to respond as to the basis of this Court's jurisdiction over this matter. Upon review of Beneficiaries' Statement of Jurisdiction, we conclude that the Orphans' Court October 30, 2013 Order constitutes an appealable order, and that this Court has jurisdiction over this matter. **See Fried v. Fried**, 501 A.2d 211, 213 (Pa. 1985) (holding that an order is not interlocutory if it precludes a party from presenting the merits of his claim to the lower court). Accordingly, we will address the merits of Beneficiaries' issues on appeal.

are related. Beneficiaries claim that, pursuant to 20 Pa.C.S.A. § 711,[2] the

Orphans' Court has exclusive jurisdiction over the administration and

distribution of trusts and their fiduciaries. Brief for Appellants at 20.

Beneficiaries assert that such jurisdiction includes actions to surcharge a

trustee and contested ancillary questions concerning the propriety of the

trustee in question and the integrity, disposition and rights to the asset in

_____

[2] Section 711 provides, in relevant part, as follows:

> Except as provided in section 712 (relating to nonmandatory exercise of jurisdiction through the orphans' court division) and section 713 (relating to special provisions for Philadelphia County), the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:
>
> * * *
>
> (2) *Testamentary trusts.* --The administration and distribution of the real and personal property of testamentary trusts, and the reformation and setting aside of any such trusts, whether created before or after the effective date of this chapter, except any testamentary trust created before the effective date of the Fiduciaries Act of 1917, jurisdiction of which was acquired by the court of common pleas prior to January 1, 1969 unless the president judge of such court orders the jurisdiction of the trust to be exercised through the orphans' court division.
>
> * * *
>
> (12) *Fiduciaries.* --The appointment, control, settlement of the accounts of, removal and discharge of, and allowance to and allocation of compensation among, all fiduciaries of estates and trusts, jurisdiction of which is exercised through the orphans' court division, except that the register shall continue to grant letters testamentary and of administration to personal representatives as heretofore.

20 Pa.C.S.A. § 711 (2), (12).

question. *Id*. at 21-22. Further, Beneficiaries claim that the Orphans' Court has the authority to adjudicate claims that, if not associated with a trust or estate, would find independent jurisdiction in another court division. *Id*. at 22. Beneficiaries contend that because their Amended Objections seek to surcharge the Co-Trustees for their breaches of fiduciary duties, resulting in a diminution of value of a substantial trust asset (*i.e.*, stock in Ashbridge Corporation ("Ashbridge")), the Orphans' Court is vested with jurisdiction over the matter. *Id*. at 25.

Beneficiaries further claim that the Orphans' Court abdicated its jurisdiction over the proposed Amended Objections "due to its misdirected belief that the Beneficiaries' claims required it to assume jurisdiction over the internal affairs of [Ashbridge]." *Id*. Beneficiaries emphasize that they are not asking the Orphans' Court to intervene in Ashbridge's corporate affairs, determine corporate profits, or remove corporate officers or directors. *Id*. at 27. Rather, Beneficiaries contend, they are merely requesting the Orphans' Court to adjudicate the conduct of the Co-Trustees with respect to the Ashbridge asset, and to award a surcharge against the Co-Trustees and disgorgement of fees paid to BNY Mellon. *Id*. Beneficiaries assert that the issue before the Orphans' Court is the conduct of the Co-Trustees in voting to retain Co-Trustee Charles, as a Director of Ashbridge, in the face of overwhelming evidence of his self-dealing, breaches of loyalty, conflicts of interest, and breaches of fiduciary duty. *Id*. at 29. Beneficiaries

contend that the Co-Trustees' actions and inactions, with respect to the Ashbridge asset, can and must be adjudicated by the Orphans' Court. *Id*. at 30.

Beneficiaries claim that the Orphans' Court superficially classified their proposed Amended Objections as concerning the same issues that were raised in their Objections, namely, those relating to Co-Trustee Charles's management of Ashbridge and Ashbridge Investment Management, LLC ("AIM"). *Id*. at 34. Beneficiaries contend that the Orphans' Court improperly relied on the averments and theories set forth in the Objections to the exclusion of the revised theories and claims set forth in the Amended Objections. *Id*. at 34-36; *see also id*. at 35 (identifying specific averments set forth in the Objections, as included in the Orphans' Court Opinion, which were omitted from the Amended Objections). Beneficiaries assert that references to Charles's management of Ashbridge and AIM, as stated in the Amended Objections, were merely "background material" and not separate legal issues. *Id*. at 36. Instead, Beneficiaries claim, the Amended Objections detailed thirteen failures and refusals of the Co-Trustees with regard to their fiduciary responsibilities for the benefit of Beneficiaries. *Id*. at 37.

Further, Beneficiaries assert that the Orphans' Court should have permitted them leave to file the Amended Objections because no party claimed that they would be unfairly prejudiced by the amendment or that

such amendment would violate a positive rule of law. *Id*. at 39. Finally, Beneficiaries contend that the Orphans' Court was required to permit the amendment pursuant to the liberal standard governing their request to amend. *Id*.

Before addressing whether the Orphans' Court improperly denied Beneficiaries' Petition for Leave to File Amended Objections, we first address the Orphans' Court's concern over subject matter jurisdiction. The question of whether a court has subject matter jurisdiction over an action is a fundamental issue of law which may be raised at any time in the course of the proceedings. *Blount v. Phila. Parking Auth.*, 965 A.2d 226, 229 (Pa. 2009).

> The test for whether a court has subject matter jurisdiction inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs. Thus, as a pure question of law, the standard of review in determining whether a court has subject matter jurisdiction is *de novo* and the scope of review is plenary.

*Id*.

Actions for surcharge and/or divestment of compensation of trustees are within the exclusive jurisdiction of the Orphans' Court. *See Horner v. First Penna. Banking & Trust Co.*, 194 A. 2d 335, 338 (Pa. 1963) (stating that that the Orphans' Court has jurisdiction and power over the administration and distribution of the estate of a decedent and that necessarily includes the determination of all questions involving compensation and surcharge of fiduciaries); *see also* 20 Pa.C.S.A. §

711(12) (conferring jurisdiction upon the Orphans' Court over, *inter alia*, the allowance to and allocation of compensation among all fiduciaries of estates and trusts). Thus, the Orphans' Court had subject matter jurisdiction over the Beneficiaries' action against the Co-Trustees.

"A motion to amend a pleading is addressed to the sound discretion of the trial court and the trial court's determination is not to be disturbed on appeal absent an abuse of discretion." ***Sejpal v. Corson, Mitchell, Tomhave & McKinley, M.D.'s, Inc.***, 665 A.2d 1198, 1200 (Pa. Super. 1995). While the right to amend should not be withheld where there is some reasonable possibility that amendment can be accomplished successfully, "where allowance of an amendment would . . . be a futile exercise, the [objections] may be properly dismissed without allowance for amendment." ***Carlino v. Whitpain Investors***, 453 A.2d 1385, 1388 (Pa. 1982) (citations omitted). Further, where appellants seek to amend their objections, but "it is unclear to us how the amendment would in any way overcome our conclusions[,]" we will not reverse the decision of the court below. ***Bell v. Irace***, 619 A.2d 365, 370 (Pa. Super. 1993).

We next determine whether granting Beneficiaries leave to file their Amended Objections would be a futile exercise. *See Carlino*, 453 A.2d at 1388. Our review of the record discloses that, in their Amended Objections, Beneficiaries objected to the Co-Trustees' failure to remove Charles as Chairman and Director of the Board of Directors of Ashbridge for (a) its

approval of AIM; (b) losses generated by AIM; (c) unreasonable and unwarranted increases in Charles's compensation, bonuses and benefits, premised upon the continuously unprofitable AIM; (d) authorizing the operation of AIM in violation of federal and Pennsylvania law; and (e) approving payment of Ashbridge assets to settle claims asserted against AIM. *See* Petition to Lift Stay and for Leave to File Amended Objections, 10/2/13, Exhibit A at 7. Additionally, in their Amended Objections, Beneficiaries objected to the Co-Trustees' failure to (a) elect independent, non-family directors of Ashbridge to prevent the continuation of AIM and Charles's self-dealing; (b) seek Orphans' Court approval for the commencement of AIM; (c) bring a shareholders derivative action on behalf of Ashbridge to recover for AIM's losses and Charles's excessive and unreasonable compensation; (d) refrain from voting for Charles's retention as Chairman and Director of the Board of Directors of Ashbridge in light of his commencement of AIM and receipt of excessive and unreasonable compensation; (e) exercise independent and fiduciary responsibility in a family voting arrangement intended to conceal Charles's wrongful acts; (f) ensure that AIM's management was proper and protected from self-dealing; (g) implement checklists for safeguards to protect against Charles's imprudent and unreasonable business decisions and self-dealing; and (h) prevent the use of other trust assets in support of AIM and Charles's

excessive and unreasonable compensation.[3] *Id*. at 7-8. As a remedy for their proposed Amended Objections, beneficiaries sought the Orphans' Court to surcharge the Co-Trustees for the diminution in the value of Ashbridge stock and divest BNY Mellon of its fees and commissions.[4] *See id*. at 9.

A surcharge is permitted when a fiduciary fails to exercise due care and loss is incurred. *See In re Warden*, 2 A.3d 565, 577 (Pa. Super. 2010). In a surcharge action, the propriety of a trustee's investment is judged as it appeared at the time of investment and not in light of subsequent changes. *Id*. at 577. Hindsight is not the test of liability for surcharge. *Id*. Investments are viewed based on their long-term, rather than short-term, performance. *Id.* No loss occurs where a trust asset increases in value over the entire period of investment, despite occasional fluctuations in value throughout the trust's life. *Id*.

In their proposed Amended Objections, Beneficiaries have not alleged a loss to the Residuary Trust. The Amended Objections do not state the value of the Residuary Trust assets, including the Ashbridge stock, either at the time it was created in 1969 or at the commencement of this action. *See*

---

[3] Beneficiaries aver that, at all times relevant to this action, the Residuary Trust held a controlling interest in the voting shares of Ashbridge. *See* Petition to Lift Stay and for Leave to File Amended Objections, 10/2/13, Exhibit A at 2.

[4] Beneficiaries also sought an award of punitive damages against Charles and surcharge of Charles for their attorneys' fees. However, on appeal Beneficiaries do not contest the Orphans' Court refusal to grant these remedies.

*In re Warden*, 2 A.3d at 578 (holding that the presence or absence of a loss is determined by comparing the value of an asset at the time the trust is created with the value of the asset at the commencement of an action for surcharge).  Beneficiaries' generally alleged loss (*i.e.*, a "precipitous decline" in the value of the Ashbridge stock) is insufficient to plead a case for surcharge.  **See** Petition to Lift Stay and for Leave to File Amended Objections, 10/2/13, Exhibit A at 5, 8.  Thus, even if the Co-Trustees breached their fiduciary duties, no surcharge can be imposed because there is no allegation establishing the loss sustained by the Residuary Trust.[5]  **See** *In re Warden*, 2 A.3d at 578 (stating that "[e]ven if there is a breach of duty, however, where there is no loss, there is no basis for a surcharge.").  Accordingly, we conclude that the Orphans' Court did not err by denying Beneficiaries leave to file the Amended Objections.[6]

In their final claim, Beneficiaries contend that the Orphans' Court erred by implementing an indefinite stay of their case against Co-Trustees.  Brief for Appellants at 39.  Beneficiaries claim that the Orphans' Court failed to

---

[5] We note that, even if Beneficiaries averred a loss to the Residuary Trust, in order to recover, they must further aver that the conduct of the Co-Trustees fell outside the standard of care set forth in the trust instrument.  **See** Trust Agreement, 7/9/52, Article ELEVENTH(B); **see also In re Warden**, 2 A.3d at 574-75 (stating that if an trust instrument is explicit as to the duty of care owed by the trustee, those terms should govern because the nature and extent of the duties of a trustee are primarily to be ascertained from the trust instrument).

[6] We may affirm a trial court's ruling on any basis supported by the record on appeal.  **See Lynn v. Nationwide Ins. Co.**, 70 A.3d 814, 823 (Pa. Super. 2013).

- 10 -

"identify a pressing need to implement the indefinite stay of claim in this matter." *Id*. at 42. Beneficiaries assert that the Orphans' Court directive that they file their corporate claims in another court is "unprecedented and without any legal support." *Id*. Beneficiaries further assert that their claims have been "hijacked" by the Orphans' Court, which continues to hold their Objections in permanent abeyance. *Id*.

Here, the Orphans' Court concluded that Beneficiaries' Objections sought regulation of the internal affairs of Ashbridge, over which the Orphans' Court had no jurisdiction. Orphans' Court Opinion, 12/23/13, at 6-8. The Orphans' Court directed Beneficiaries to seek redress of their corporate claims in an alternate forum (*i.e.*, through a shareholder derivative action) and stayed Beneficiaries' Objections pertaining to (1) the conduct of Charles solely in his capacity as Co-Trustee (as opposed to an officer and/or director of Ashbridge and/or AIM); and (2) the fees and commissions received by BNY Mellon as corporate Co-Trustee of the Residuary Trust, "pending disposition of the corporate objections in a more appropriate forum, waiver of those claims, or by leave of court." *See* Orphans' Court Opinion, 6/21/13, at 2; *see also* Objections to the First Account of Trust, 9/4/12, at 5-6; Objections to the Second Account of Trust, 9/4/12, at 5-6.

When examining an order to stay proceedings in Pennsylvania, our standard of review is *de novo* and our scope of review is plenary. *See S.K.C. v. J.L.C.*, 2014 Pa. Super. LEXIS 1191 at *11-12 (Pa. Super. 2014).

Beneficiaries' final claim fails for the same reasons expressed above. In their Objections, Beneficiaries failed to identify any actual loss to the Residuary Trust that would entitle them to their requested relief against Co-Trustees. *See In re Warden*, 2 A.3d at 578. Accordingly, we conclude that the Orphans' Court did not err by denying Beneficiaries' request to lift the stay of their Objections concerning Charles's conduct solely in his capacity as Co-Trustee and BNY Mellon's fees and commissions as corporate Co-Trustee.

Order affirmed.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/2014

- 12 -

IN THE COURT OF COMMON PLEAS
CHESTER COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION
IN RE: ESTATE OF CHARLES B. GRACE, DECEASED
RESIDUARY TRUST OF CHARLES B. GRACE, DECEASED
NO. 1569-0115
SUPERIOR COURT NO. 3298 EDA 2013

## OPINION

Eugene G. Grace, III, Eugene Grace, Andrea Grace and Alexandra Grace, beneficiaries of the Trust Established Under Residuary Trust of Charles B. Grace, Deceased, appeal to the Superior Court from this court's Order of October 30, 2013 denying the Petition to Lift Stay and for Leave to File Amended Objections, and reaffirming the June 21, 2013 Order. I write now in fulfillment of the mandate of Rule 1925 of the Pennsylvania Rules of Appellate Procedure.

Background

The Residuary Trust of Charles B. Grace was established in 1969 under the Will of Charles B. Grace, Deceased ("Settlor"). Settlor was an owner and operator of a steel fabricator, Heintz Manufacturing Company. In 1981, Heintz Manufacturing Company was renamed Ashbridge Corporation. Charles B. Grace, Jr., BNY Mellon Bank, Eugene G. Grace, Jr. and Michael D.G. Grace are Co-Trustees of the Trust. In 2003, the Trustees moved the Trust's shares of Ashbridge Corporation and other real estate to a sub account.

1

On July 3, 2012, the Second Account for the Residuary Trust Under the Will of Charles B. Grace was filed.[1] On September 4, 2012, beneficiaries Eugene G. Grace III, Eugene Grace IV, Andrea Grace, and Alexandra (hereafter "Objectants") filed Objections to the Second Account of Trust. Objectants claimed that Charles B. Grace, Jr. ("Charles"), while managing Ashbridge Corporation, founded Ashbridge Investment Management, LLC ("AIM") which managed the assets of other individuals and entities. Objectants claimed that any investment profits from Ashbridge inured directly to the trust owners, however, any investment profits from AIM inured directly to the benefit of third parties. Objectants claimed that Ashbridge had insufficient assets to warrant and afford the creation and operation of another asset management company. They claimed that the ownership and operation of AIM created a risk to Ashbridge assets because Charles induced Ashbridge to pay monies to settle claims against AIM and Charles personally. Objectants claimed that AIM suffered losses and Charles engaged in self-dealing to cover the losses, resulting in the diminution in value of Ashbridge.

Additionally, Objectants claimed that since 2001:

- Ashbridge made cash transfers to AIM
- Ashbridge provided start-up capital to AIM
- Ashbridge made unsecured loans to AIM in excess of 6.5 mill

---

[1] The Estate of Charles B. Grace was opened in 1993 when the First Account for Residuary Trust Under the Will of Charles B. Grace, Ashbridge Corporation Sub-Account, was filed. In June of 1994 the schedule of distribution was approved. There was no activity on the docket until July 3, 2012 when an Account was filed, the Second Account for the Residuary Trust Under the Will of Charles B. Grace. No Objections were filed to the First Account. On September 4, 2012, two pleadings were filed: Objections to the First Account and Objections to the Second Account.

Charles made personal loans to AIM which were repaid
while Ashbridge loans remained unpaid
- Ashbridge covered AIM's losses
- Ashbridge provided 9 million in compensation, salary,
bonuses and pension contributions to Charles for work
that he performed for AIM which did not benefit Ashbridge

On November 28, 2012, I held the matter in abeyance to permit the Grace family members to mediate their disputes. Mediation hearings were scheduled in March of 2013. On April 15, 2013, Charles filed Preliminary Objections to the Objections filed by Objectants. BNY Mellon, N.A. joined in the Preliminary Objections. On April 29, 2013, Objectants filed Preliminary Objections to the Preliminary Objections filed by Charles.

On June 21, 2013, I dismissed Objectants' Preliminary Objections to the Preliminary Objections filed by Charles, and I sustained in part the Preliminary Objections filed by Charles to the Objections to the First Account and to the Second Account. The sustained Objections concerned jurisdiction of the Orphans' Court.

I found that this Court did not have jurisdiction over the internal affairs of Ashbridge LLC and its predecessors. I ruled that Objectants may pursue their grievances in a more appropriate forum, and that any Objection as to the conduct of Charles in his capacity as Co-Trustee solely (as opposed to his capacity as an officer of Ashbridge LLC and its predecessor or as a member of the governing boards or employee of Ashbridge LLC and its predecessors over which this Court has no jurisdiction) is preserved, pending further proceedings. Additionally, I found that all preserved matters and those dismissed without prejudice are stayed pending disposition of the

3

corporate objections in a more appropriate forum, waiver of those claims, or by leave of Court.

On October 2, 2013, Objectants filed a Petition to Lift Stay and for Leave to File Amended Objections to the First and Second Accounts. On October 30, 2013, I denied the Petition and reaffirmed the Order of June 21, 2013. On November 21, 2013, Objectants filed the instant Appeal.

In their Concise Statement of Errors raised on Appeal, Objectants contend that I erred in denying Objectants leave to file amended objections:

> asserting claims of breach of fiduciary duty against certain co-trustees of the Residuary Trust solely in their capacity as such, which claims are within the mandatory and exclusive jurisdiction of the Orphans' Court.

> where neither respondent, Charles Grace, nor respondent BNY Mellon, N.A. claimed prejudice as a result of the requested amendment and no such prejudice could be asserted.

> where neither respondent, Charles Grace, nor respondent BNY Mellon, N.A. asserted that amendment would violate a positive rule of law and the requested amendment is not contrary to a positive rule of law.

> where neither respondent, Charles Grace, nor BNY Mellon, N.A. asserted that the amendment would be futile and the requested amendment is not futile.

Objectants also contend that that Court erred by refusing to lift the stay which pursuant to the June 21, 2013 Order and without said leave, continues until and unless Objectants abandon all preserved matters and those thereby dismissed with prejudice, or address them in a more

4

appropriate forum, when the only appropriate and permitted forum for the claims which Objectants are asserting is the Orphans' Court, *See In re Westin*, 874 A.2d 139 (Pa. Super. 2005), and the stay is unreasonably delaying Objectants' right to have their claims adjudicated without forum.

### Jurisdiction of the Orphans' Court

Objectants claim that the Orphans' Court is the only forum for the claims asserted in the amended objections to be heard, and that the stay should be lifted so that the Orphans' Court may adjudicate their claims for breach of fiduciary duty against certain Co-Trustees of the Trust.

20 Pa. C.S.A. §711 provides in part,

Except as provided in section 712 (relating to nonmandatory exercise of jurisdiction through the orphans' court division) and section 713 (relating to special provisions for Philadelphia County), the jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:

(1) Decedents' estates. The administration and distribution of the real and personal property of decedents' estates and the control of the decedent's burial.

(2) Testamentary trusts.--The administration and distribution of the real and personal property of testamentary trusts, and the reformation and setting aside of any such trusts, whether created before or after the effective date of this chapter, except any testamentary trust created before the effective date of the Fiduciaries Act of 1917, [FN1] jurisdiction of which was acquired by the court of common pleas prior to January 1, 1969 unless the president judge of such court orders the jurisdiction of the trust to be exercised through the orphans' court division.

(3) Inter vivos trusts.--The administration and distribution of the real and personal property of inter vivos trusts, and the reformation or setting aside of any such trusts, whether created before or after the effective date of this chapter, except any inter vivos trust jurisdiction of which was acquired by the court of common pleas prior to January 1, 1969 unless the president judge of such court orders the jurisdiction of the trust to be exercised through the orphans' court division.

5

12) Fiduciaries. The appointment, control, settlement of the accounts of, removal and discharge of, and allowance to and allocation of compensation among, all fiduciaries of estates and trusts, jurisdiction of which is exercised through the orphans' court division, except that the register shall continue to grant letters testamentary and of administration to personal representatives as heretofore.

The Orphans' Court has no jurisdiction to regulate the internal affairs of a corporation even though the decedent owned shares of stock in that corporation. *In re Goetz's Estate*, 85 A. 65 (Pa. 1912); *In re Nixon's Estate*, 86 A. 849 (Pa. 1913). *See In re Watson's Estate*, 170 A. 254 (Pa. 1934) (Orphans' Court cannot dictate who shall be appointed to or removed from the board of directors of a corporation. Removal of directors of charitable corporation organized at direction of will was not an exercise of jurisdiction over testamentary trustees, where bequest was outright gift to corporation and not to directors as trustees, though testatrix referred to directors as trustees).

In *Goetz's Estate*, 85 Atl. 65 (Pa. 1912), the executors of an estate, with the consent of the beneficiaries under the will, organized a corporation for the purpose of continuing the testator's business and assigned to the corporation the property of the estate, which thereafter made large profits. The Supreme Court held that the Orphans' Court was without authority to ascertain and distribute the profits of the corporation or to fix the salary of an executor who was the business manager of the corporation.

In this case, Objectants raised claims concerning Charles' management of Ashbridge and AIM, his compensation and bonuses for

6

work that he performed for AIM, and the amount of funds from Ashbridge that were allegedly used to pay Charles for the work that he performed for AIM. Additionally, the Objectants' raised claims concerning the acquisition of another corporation, Threshold Group, and the amount of cash or stock of AIM or Threshold used for this acquisition. In order to rule on the issues, this court needs to make factual findings regarding the internal management of those corporations. Any ruling could ultimately "regulate" the internal management of the corporations.

Objectants' request to file Amended Objections concerned the same issues relating to Charles' management of Ashbridge, AIM and Threshold. Thus, I determined that the issues concerning Ashbridge, AIM and Threshold are not properly before the Orphans' Court and denied the request to life the stay. "The profits of the corporation are not personal property which has come into the hands of the executor of the corporation; therefore, not subject to the control of the orphans' court. If there has been any abuse of power by the corporate officers or directors, a remedy shall lie in the court of common pleas, civil division, rather than the orphans' court division, which has no powers to regulate the internal affairs of a corporation." *In re Newcomer's Estate*, 7 Pa. D. & C. 3d 457, 462 (Pa. Com.Pl. 1978).

Additionally, this court does not have jurisdiction to rule on the matters concerning Ashbridge LLC, a Delaware limited liability company. It is well-settled that Pennsylvania courts will not take jurisdiction for the purpose of

7

regulating or interfering with the internal management or affairs of a foreign corporation. *Plum v. Tampax, Inc.*, 160 A.2d 549, 551 (Pa. 1960).

In the Petition to Lift the Stay, Objectants assert that they have no claims concerning the internal affairs of Ashbridge LLC or its predecessors because Objectants are not shareholders of Ashbridge LLC or its predecessors. They claim that they lack standing to assert a derivative claim on behalf of the corporation. I note that Charles claimed that Eugene G. Grace, III owns interests in Ashbridge LLC that are not subject to irrevocable trust, and accordingly Eugene has standing to initiate a derivative action against Charles. (Paragraph 17 of Answer and New Matter filed by Charles 10/28/13, Paragraph 15 of the Preliminary Objections filed by Charles 4/15/13).[2] In Answer to Charles' Preliminary Objections, Objectants state that Paragraph 15 includes impertinent facts not of record, and that the foregoing facts concerning a corporate derivative action and the purported availability thereof are wholly irrelevant and immaterial to the jurisdictional issue raised in the Preliminary Objections. (Answer of Objectants, 4/29/13). Objectants never directly addressed whether Eugene, as an owner of shares of stock in Ashbridge LLC, has standing in his own name to pursue a derivative action against Charles in the Court of Chancery of the State of Delaware.

For the reasons stated above, the Order of October 30, 2013 was the proper relief in this matter and amply supported by the evidence.

---

[2] Charles also asserts that Eugene is the sole beneficiary, with the right to control, a revocable trust which owns 700 shares of Ashbridge.

8

BY THE COURT:

_____
Katherine B. L. Platt,   J.

12/23/13
(date)

FILED
CLERK OF ORPHANS' COURT
CHESTER COUNTY, PA.
2013 DEC 23 PM 1:29

9