J-S05014-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| CATHERINE G. GARDNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DAVID C. GARDNER, AND GARDNER | : | No. 706 EDA 2025 |
| LAW FIRM, P.C. | : | |

Appeal from the Order Entered February 7, 2025
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 240902270

BEFORE: PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED MAY 4, 2026**

Catherine G. Gardner ("Ms. Gardner") appeals *pro se* from the order granting the motion to dismiss filed by David C. Gardner ("Mr. Gardner") and Gardner Law Firm, P.C.'s (collectively "Defendants"). After careful review, we affirm.

The trial court summarized the factual and procedural history of this matter as follows:

[Ms.] Gardner is the daughter of [Mr.] Gardner. Mr. Gardner previously entered into a separation agreement with Ashley Gardner, Ms. Gardner's mother, where Mr. Gardner agreed to pay rent on [Ms. Gardner]'s apartment until four months after her graduation from college.

In late 2020, Mr. Gardner approached Ms. Gardner and proposed to buy a house for her in Philadelphia in lieu of the rental

_____

[*] Retired Senior Judge assigned to the Superior Court.

payments. Mr. Gardner is a real estate attorney, but he is not licensed in Pennsylvania. Although Mr. Gardner did not ask Ms. Gardner to contribute any money toward the purchase of the house, they would both be on the deed as co-owners. After visiting several properties, the Gardners entered into an agreement to purchase the property located at 1459 N. 30th Street in Philadelphia ("the Property") from seller Warren Wilkerson.

The parties hired a home inspector, who completed an inspection. The inspection revealed several issues with the electrical system. Ms. Gardner did not read the home inspection report, nor many of the documents related to the property or settlement (although the documents are attached to the Complaint). Based on the inspection, the parties and Mr. Wilkerson signed an Addendum to the Agreement of Sale, stating that Mr. Wilkerson would correct the issues identified in the home inspection report.

Unrelated to the electrical issues, the sale was delayed for approximately seven months due to outstanding code violations related to a Philadelphia Department of Licenses and Inspection citation for an addition that was not built according to code. Upon submission of an engineer's letter by Mr. Wilkerson, L&I removed the code violations and the Gardners completed the purchase.

The parties settled on the Property on September 29, 2021, and Ms. Gardner moved into the property on the same day. As part of the purchase, the Gardners signed an occupancy agreement that required Mr. Gardner to pay the mortgage for 24 months, or until Ms. Gardner graduated college and obtained a full-time job, whichever occurred first. The occupancy agreement provides that Ms. Gardner would be responsible for the mortgage payments after the 24-month period, and if she did not assume the payments, then Mr. Gardner could sell the home and receive 100% of the proceeds. To date, Ms. Gardner has not paid any money towards the house.

Almost immediately after moving in, Ms. Gardner discovered many defects in the home, including significant leaking, flooding, water damage, and the presence of black mold. Ms. Gardner notified Mr. Gardner of these issues. After the purchase, in an email from Mr. Gardner to Ashley Gardner, Mr. Gardner acknowledged that he had come to understand that Mr. Wilkerson had improperly built the addition and that the certification from the engineer was inaccurate. In the same email, Mr. Gardner

recognized that the home inspection report did not flag the building code violations or the shoddy work done on the roof. Despite knowing this information, Ms. Gardner continued to live at the Property.

On September 23, 2022, an electrical fire started in the common area of the home. The fire destroyed the house. The Gardners received insurance money, which they used to renovate the Property. The insurance company also paid Ms. Gardner for twelve months of housing. Ms. Gardner has not returned to the Property.

Trial Court Opinion, 7/14/25, at 2-5 (footnotes omitted).

On September 21, 2024, Ms. Gardner filed the instant *pro se* complaint, alleging Mr. Gardner induced her to purchase and occupy the Property despite allegedly knowing, both before and after settlement, about defects in the home. Specifically, Ms. Gardner asserted the following causes of action:

Count 1: Legal Malpractice

Count 2: Legal Malpractice (Gardner Law Firm, P.C.)

Count 3: Mortgage/Title Fraud, Conspiracy to Commit Mortgage and Title Fraud

Count 4: Fraud and Fraudulent Inducement

Count 5: Breach of Fiduciary Duty, Abuse of Agency and Confidential Relationship

Count 6: Intentional Infliction of Emotional Distress

Count 7: Negligent Infliction of Emotional Distress

Count 8: Negligent Misrepresentation

Count 9: Undue Influence

Count 10: Fraud and Conspiracy to Defraud

Count 11: Breach of Agreement to Pay Rent

Complaint, 9/21/24.

Ms. Gardner asserted that Mr. Gardner insisted on being her agent and lawyer for the transaction; he confirmed, both prior to and at settlement, that the Property was defect-free, fully renovated, and up to code; Ms. Gardner moved in based on that confirmation; she endured nearly a year of major disasters (including recurrent major flooding, collapsing ceilings, rotted structural beams, waterlogged electrical fixtures, and toxic black mold infestation); the Property was eventually gutted by an electrical fire on September 23, 2022, which nearly killed her, and did kill her pets and destroy her personal property; and that Allstate, the fire insurance carrier, advised Mr. Gardner that the Property did not comply with the Philadelphia Housing Code before the fire and had structural and electrical defects. *See id.* at 2.

In the complaint, Ms. Gardner explained that Mr. Gardner had filed suit against her on February 28, 2024, seeking to compel Ms. Gardner to sign a listing agreement to market the since rebuilt Property. *See id.* at 3. The court treated the suit as a partition action, which is still pending before the court. Ms. Gardner filed an answer and counterclaim. *See id.*

Ms. Gardner acknowledged that since Mr. Gardner's lawsuit was treated as a partition action, her counterclaim must proceed as a separate action because Rule 1556 restricts the filing of counterclaims in partition actions. Accordingly, Ms. Gardner filed the instant complaint to constitute her counterclaim as a separate action. *See id.* at 4.

On January 3, 2025, Ms. Gardner filed a motion for default judgment against Defendants for failure to answer the complaint.

On January 8, 2025, Mr. Gardner filed a motion to dismiss the complaint, asserting Ms. Gardner failed to state a cause of action for any of the alleged claims against him. *See* Motion to Dismiss Complaint, 1/8/25, at 22.

On January 17, 2025, Mr. Gardner filed an opposition to the motion for default judgment, based on his filing of the motion to dismiss. On January 28, 2025, the court denied Ms. Gardner's motion for default judgment.

On February 6, 2025, this court granted Mr. Gardner's motion to dismiss, reasoning "it appearing that most if not all of the issues raised in this action are duplicative of, and/or may be resolved in the pending partition action... ." Order, 2/6/25. This timely appeal followed.

Preliminarily, we must determine what, if any, issues Ms. Gardner has preserved for appeal, as there are discrepancies between Ms. Gardner's 1925(b) concise statement, her statement of questions involved, and the argument section of her brief.

Ms. Gardner raises the following issues in her statement of questions involved:

> 1. Whether the trial court prejudicially erred by dismissing [Ms. Gardner's] 11-count complaint for tort damages with prejudice on the ground that "most if not all of the issues raised in this action are duplicative of, and/or may be resolved in the pending partition action, February Term 2024, No. 3319."
>
> 2. Whether the trial court prejudicially erred by ruling that [Ms. Gardner's] claims were "duplicative" of those in the pending action

for partition of real property (when [Ms. Gardner] had no tort claims in that partition action, only affirmative defenses).

3. Whether the trial court prejudicially erred by ruling that the issues raised in [Ms. Gardner's] tort complaint could be "resolved" in the pending action for partition of real property (when tort damages are not recoverable in partition actions as a matter of law).

4. Whether the trial court prejudicially erred by dismissing [Ms. Gardner's] complaint with prejudice based on matters outside the judicial record of this case.

5. Whether the trial court prejudicially erred in its 1925(a) opinion by not applying the proper standard of review; by not accepting the well-pled factual allegations of the complaint as true; by rejecting well-pled allegations regarding the fiduciary nature of the parties' relationship; by inventing a new narrative; by deciding questions of fact at the pleadings stage; and by erroneously concluding that [Mr.] Gardner was a mere "co-buyer" who owed no duty to [Ms. Gardner].

6. Whether the trial court prejudicially erred by dismissing the complaint with prejudice without holding a hearing and by not allowing [Ms. Gardner] to be heard on matters, outside the record of this case, on which the trial court based its final order.

7. Whether the trial court prejudicially erred and abused its discretion by granting [Mr.] Gardner's untimely Rule 1028 preliminary motion to dismiss.

8. Whether the trial court prejudicially erred by holding that no certificate of merit had been filed for [Ms. Gardner's] legal malpractice claims.

9. Whether the trial court violated [Ms. Gardner's] federal and state constitutional rights, including [Ms. Gardner's] right to due process of law.

Appellant's Brief, at 5-6 (unnecessary capitalization omitted).

We note that while Ms. Gardner's brief contains an argument section, it is not divided "into as many parts as there are questions to be argued."

- 6 -

Pa.R.A.P. 2119(a). While Ms. Gardner presents 9 questions in her statement of questions involved, she divides her argument section into 7 main sections, as follows:

> I. In its final order, the trial court prejudicially erred by dismissing [Ms. Gardner's] tort complaint with prejudice on the ground that "most if not all" of [Ms. Gardner's] issues "are duplicative of, and/or may be resolved" in a separate, ongoing action for partition of real property (No. 3319)
>
> II. In its rule 1925(a) opinion, the trial court prejudicially erred by ignoring the standard of review for demurrers, by not accepting well pled factual allegations as true, and by ruling that [Mr.] Gardner was a mere co-buyer who owed no duty to [Ms. Gardner]
>
> III. By dismissing the complaint with prejudice at the pleadings stage, the trial court shut the courthouse doors to [Ms. Gardner] and violated [Ms. Gardner's] constitutional rights to due process of law
>
> IV. The trial court erred by deciding the case based on matters outside the judicial record of the case
>
> V. The trial court erred by dismissing the complaint in response to untimely "preliminary objections"
>
> VI. The trial court erred by ruling that no certificate of merit was filed for [Ms. Gardner's] legal malpractice claims
>
> VII. Each count of the complaint states a legally cognizable claim

*See* Appellant's Brief, at 28, 31, 49, 52, 56, and 58.

Finally, the trial court ordered Ms. Gardner to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The statement included 12 claims of error, many of which were interrelated.

We first note "[i]t is well-established that any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review. Further, an

appellant's concise statement must identify the errors with sufficient specificity for the trial court to identify and address the issues the appellant wishes to raise on appeal." ***Commonwealth v. Bonnett***, 239 A.3d 1096, 1106 (Pa. Super. 2020) (citations omitted).

Upon review, it appears Ms. Gardner failed to preserve her issues pertaining to the court considering matters outside the record (issue 4 in the statement of questions involved, and section 4 in the argument portion), the untimeliness of the preliminary objections (issue 7 in the statement of questions involved, and section 5 of the argument portion), and the court's ruling pertaining to the certificate of merit (issue 8 in the statement of questions involved, and section 6 of the argument portion), by failing to include them in her 1925(b) concise statement. As such, those issues are not preserved for appellate review and are waived. ***See id.***

Conversely, we note that in the last argument section of her brief, Ms. Gardner contends that "each count of the complaint states a legally cognizable claim." Appellant's Brief, at 58. While this issue was not included in the statement of issues involved, it was preserved in Ms. Gardner's 1925(b) concise statement. Accordingly, we find this issue preserved. ***See Bonnet***, 239 A.3d at 1106.

It appears the remainder of Ms. Gardner's issues listed in her statement of issues involved are addressed, at least in some part, in her argument

section, whether out of order or in a subsection of another issue. To the degree the remaining issues were preserved we will address them accordingly.

Ms. Gardner's issues challenge the trial court's order granting Mr. Gardner's motion to dismiss. Our review of a trial court's grant of preliminary objections in the nature of a demurrer is as follows:

> [O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. 2011) (citation omitted).

First, Ms. Gardner takes issue with the trial court dismissing her 11-count complaint for tort damages with prejudice on the ground that "most if not all of the issues raised in this action are duplicative of, and/or may be resolved in the pending partition action, February Term 2024, No. 3319." In its opinion, the trial court admits that its order, providing the above reasoning alone, was "inartful." Trial Court Opinion, 7/14/25, at 6. We have to agree.

- 9 -

Mr. Gardner's request to dismiss the complaint was not based on the fact that a separate partition action existed, but rather on his assertion that Ms. Gardner failed to state a cause of action for any of the alleged claims against him. The trial court's sole reasoning that *possibly less* than all claims *might* get resolved in a separate action that was not in the record in front of it, is notably confusing, especially where that reasoning was not raised by the moving party.

However, we have long held that an appellate court "may affirm a trial court's ruling on any basis supported by the record on appeal." **Lynn v. Nationwide Ins. Co.**, 70 A.3d 814, 823 (Pa. Super. 2013). This is known as "the right-for-any-reason doctrine ...." **In re A.J.R.-H.**, 188 A.3d 1157, 1175 (Pa. 2018). The rationale for the doctrine "is that appellate review is of the judgment or order before the appellate court, rather than any particular reasoning or rationale employed by the lower tribunal." **Id.** at 1176.

In its 1925(a) opinion, the court expands on its reasoning by providing a thorough review of how Ms. Gardner fails to state a cognizable cause of action for each count of her complaint. The trial court held as follows:

1. Concluded the court properly dismissed Counts 1, 2, 5, and 9 because Mr. Gardner was not Ms. Gardner's agent, attorney, and/or fiduciary but rather was a participant in the transaction, where a father and daughter co-purchased a property, and Mr. Gardner did not owe Ms. Gardner a fiduciary duty. **See** Trial Court Opinion, 7/14/25, at 8-11;

2. Concluded the court properly dismissed the claims for fraud, Counts 3, 4, and 10, along with the claim for negligent misrepresentation, Count 8, because even assuming *arguendo* that Mr. Gardner conspired to convince Ms. Gardner to move into the Property knowing

it was dangerous, Ms. Gardner does not allege how or why Mr. Gardner forced her to continue occupying the Property after she personally discovered the defects. *See id.* at 11-12;

3. Concluded the court properly dismissed Count 6 for IIED because Ms. Gardner did not plead any "extreme and outrageous" conduct; and the court properly dismissed Count 7 for NIED because the parties did not have a contractual or fiduciary relationship and Ms. Gardner did not present a claim for any other theories necessary to prove a claim for NIED. *See id.* at 12-13;

4. Finally, concluded the court properly dismissed Count 11, for breach of agreement to pay rent, because Ms. Gardner is not a party to the rent payment agreement between Mr. Gardner and Ms. Gardner's mother; and in any event Ms. Gardner signed the occupancy agreement for the Property, demonstrating her intent to co-own the property in lieu of rental payments, and such agreement controls the obligations of the parties to this action and would supersede any other obligation. *See id.* at at 13.

After a thorough review of the record, the briefs of the parties, the applicable law, and the trial court's 1925(a) opinion, we find the trial court properly determined that Ms. Gardner failed to state a cognizable cause of action for each count of her complaint. *See Massaro v. McDonald's Corporation*, 280 A.3d 1028, 1035 n.2 (Pa. Super. 2022) ("[A] complaint should only be dismissed with prejudice where the plaintiff has failed to assert facts which may give rise to a cognizable cause of action, and an amendment of the claims would be futile."). The court's analysis comprehensively discusses and properly disposes of Ms. Gardner's claims. Accordingly, we adopt the trial court's analysis contained on pages 7 through 13 of the 1925(a) opinion as our own for purposes of this appellate review.

We briefly acknowledge that Ms. Gardner includes citations to case law suggesting that dismissal of a complaint with prejudice should not be ordered if a plaintiff may be able to state a cause of action by amending the complaint. A plaintiff has an automatic right to amend a complaint within twenty days of the filing of a defendant's preliminary objections. **See** Pa.R.C.P. 1028(c)(1). If not filed within twenty days, a plaintiff must obtain either the defendant's consent or leave of court to file an amended complaint. **See** Pa.R.C.P. 1033(a) ("A party, either by filed consent of the adverse party or by leave of court, may at any time … amend the pleading."). "[T]he decision whether to grant leave to amend a pleading is within the trial court's sound discretion." ***d'Happart v. First Commonwealth Bank***, 282 A.3d 704, 737 (Pa. Super. 2022) (citation omitted).

Importantly, Ms. Gardner never requested leave to amend her complaint, nor did she seek Mr. Gardner's consent to amend the complaint. Even on appeal, she has not made any direct requests to amend her complaint. Further, Ms. Gardner does not establish that the trial court had an obligation to *sua sponte* allow amendment of the complaint. Therefore, Ms. Gardner waived any such claim. **See *Werner v. Zazyczny***, 681 A.2d 1331, 1338 (Pa. 1996) (concluding a plaintiff's failure to seek leave to amend his complaint renders his claim waived, and no case law "requir[es] a court to *sua sponte* order or require a party to amend his pleading"); ***d'Happart***, 282

A.3d at 738 (finding that because plaintiffs did not request permission to amend the complaint, they waived the claim).

Based upon the foregoing, we affirm the trial court's order.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/4/2026

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**TRIAL DIVISION – CIVIL**

| | |
|---|---|
| CATHERINE GARDNER | : Superior Court Docket: |
| | : |
| | : 706 EDA 2025 |
| | : |
| v. | : Trial Court Docket: |
| | : |
| | : September Term 2024 |
| DAVID C. GARDNER and GARDNER | : No. 2270 |
| LAW FIRM, P.C. | : |
| | : OPFLD-Gardner Vs Gardner Etal [SYC] |
| | : |

2025 JUL 14 PM 3:48
JUDICIAL RECORDS
1ST JUDICIAL DISTRICT PA

### 1925(a) Opinion

24090227000031

Plaintiff Catherine Gardner and Defendant David Gardner are daughter and father. In September 2021, the Gardners purchased a property in Philadelphia for Ms. Gardner to use while a student at Temple University ("the Property"). Mr. Gardner paid for the property, but both Gardners are identified on the deed as co-owners. While living in the Property, Ms. Gardner discovered substantial water damage, including mold. The Property was later rendered a total loss as a result of an electrical fire in September 2022. Ms. Gardner filed this action on September 21, 2024 against Mr. Gardner and his law firm alleging that Mr. Gardner knew about the defects, including the electrical defects that led to the fire, and ignored them, thus placing Ms. Gardner in danger and causing her to suffer losses. After the Property was rebuilt, Mr. Gardner filed a partition action, which is still pending before this Court, seeking to partition and sell the Property.

In this action, Ms. Gardner alleges that Mr. Gardner, acting as her agent, attorney, and/or fiduciary, induced her to sign the deed and occupy the Property, knowing that it was unsafe or defective. Mr. Gardner filed a Motion to Dismiss,

COPIES SENT PURSUANT TO Pa.R.C.P. 236(b) D. KELLY 07/14/2025

which this Court granted, stating that most, if not all of the issues raised may be properly resolved through disposition of the Property in the already-pending partition action. This timely appeal followed.

Any of Ms. Gardner's claims pertaining to the purchase and/or ownership of the Property will be resolved in the partition action. This Court properly dismissed Ms. Gardner's remaining claims related to her occupancy of the Property because Mr. Gardner was merely a co-buyer of the Property, and did not owe Ms. Gardner a duty as her agent, attorney or fiduciary. For the reasons set forth below, the Superior Court should affirm this Court's Order dismissing Ms. Gardner's claims.

## A. Facts and Procedural Background

Plaintiff Catherine Gardner is the daughter of Defendant David Gardner. Mr. Gardner previously entered into a separation agreement with Ashley Gardner, Ms. Gardner's mother, where Mr. Gardner agreed to pay rent on Catherine's apartment until four months after her graduation from college.

In late 2020, Mr. Gardner approached Ms. Gardner and proposed to buy a house for her in Philadelphia in lieu of the rental payments. Mr. Gardner is a real estate attorney, but he is not licensed in Pennsylvania. Although Mr. Gardner did not ask Ms. Gardner to contribute any money toward the purchase of the house, they would both be on the deed as co-owners. After visiting several properties, the Gardners entered into an agreement to purchase the property located at 1459 N. 30th Street in Philadelphia ("the Property") from seller Warren Wilkerson.

2

The parties hired a home inspector, who completed an inspection. The inspection revealed several issues with the electrical system. Ms. Gardner did not read the home inspection report, nor many of the documents related to the property or settlement (although the documents are attached to the Complaint). Based on the inspection, the parties and Mr. Wilkerson signed an Addendum to the Agreement of Sale, stating that Mr. Wilkerson would correct the issues identified in the home inspection report.[1]

Unrelated to the electrical issues, the sale was delayed for approximately seven months due to outstanding code violations related to a Philadelphia Department of Licenses and Inspection citation for an addition that was not built according to code. Upon submission of an engineer's letter by Mr. Wilkerson, L&I removed the code violations and the Gardners completed the purchase.

The parties settled on the Property on September 29, 2021, and Ms. Gardner moved into the property on the same day. As part of the purchase, the Gardners signed an occupancy agreement that required Mr. Gardner to pay the mortgage for 24 months, or until Ms. Gardner graduated college and obtained a full-time job, whichever occurred first.[2] The occupancy agreement provides that Ms. Gardner would be responsible for the mortgage payments after the 24-month period, and if she did not assume the payments, then Mr. Gardner could sell the home and receive

_____

[1] According to the Complaint, Wilkerson did not satisfactorily make the required repairs.
[2] As Ms. Gardner has not graduated from college, the period expired after 24 months in October, 2023.

3

100% of the proceeds. To date, Ms. Gardner has not paid any money towards the house.

Almost immediately after moving in, Ms. Gardner discovered many defects in the home, including significant leaking, flooding, water damage, and the presence of black mold. Ms. Gardner notified Mr. Gardner of these issues. After the purchase, in an email from Mr. Gardner to Ashley Gardner, Mr. Gardner acknowledged that he had come to understand that Mr. Wilkerson had improperly built the addition and that the certification from the engineer was inaccurate. In the same email, Mr. Gardner recognized that the home inspection report did not flag the building code violations or the shoddy work done on the roof. Despite knowing this information, Ms. Gardner continued to live at the Property.

On September 23, 2022, an electrical fire started in the common area of the home. The fire destroyed the house. The Gardners received insurance money, which they used to renovate the Property. The insurance company also paid Ms. Gardner for twelve months of housing. Ms. Gardner has not returned to the Property.

On February 28, 2024, Mr. Gardner filed his partition complaint seeking to partition and sell the Property (Philadelphia Court of Common Pleas February Term 2024, No. 3319) ("Partition Action"). In the Partition Action, Ms. Gardner filed an Answer with New Matter and Counterclaim alleging the same claims for money damages that she has asserted in this action. Mr. Gardner filed a Motion to Dismiss Ms. Gardner's counterclaims in the Partition Action, which this Court

4

granted, noting that the rules for partition do not permit the type of counterclaims that Ms. Gardner asserted. This Court later entered an Order partitioning the Property, 50% to Mr. Gardner and 50% to Ms. Gardner, and appointed a partition officer to determine owelty. The Partition Action remains pending.

Ms. Gardner filed this Complaint on September 21, 2024, following the dismissal of the counterclaims in the Partition Action, alleging the following counts.

| 1 | Legal Malpractice (against Defendant David Gardner) |
|----|---------------------------------------------------------------|
| 2 | Legal Malpractice (against Gardner Law Firm, P.C.) |
| 3 | Mortgage/Title Fraud, Conspiracy to Commit Mortgage and Title Fraud |
| 4 | Fraud and Fraudulent Inducement |
| 5 | Breach of Fiduciary Duty, Abuse of Agency and Confidential Relationship |
| 6 | Intentional Infliction of Emotional Distress (IIED) |
| 7 | Negligent Infliction of Emotional Distress (NIED) |
| 8 | Negligent Misrepresentation |
| 9 | Undue Influence |
| 10 | Fraud and Conspiracy to Defraud |
| 11 | Breach of Agreement to Pay Rent |

In sum, Ms. Gardner alleges that Mr. Gardner induced her to purchase and occupy the Property despite allegedly knowing, both before and after settlement, about all the defects in the home.

Mr. Gardner filed a Motion to Dismiss, to which Ms. Gardner responded.[3] This Court granted the Motion to Dismiss on February 6, 2025, stating that "most if not all of the issues raised in this action are duplicative of, and/or may be resolved in the pending partition action... ." Ms. Gardner filed this timely appeal on March 10, 2025.

---

[3] The Motion was labeled as a Motion to Dismiss, but was styled as preliminary objections to a pleading pursuant to Rule 1028(a)(2) and Rule 1028(a)(4).

5

## B. Standard of Review

The Motion to Dismiss was styled primarily as preliminary objections in the nature of a demurrer based on Rule 1028(a)(4). "Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom." *Liberty Mut. Ins. Co. v. Domtar Paper Co.*, 77 A.3d 1282, 1285 (Pa. Super. 2013). The appellate standard of review of a ruling on preliminary objections is "to determine whether the trial court committed an error of law." *Id.* Such preliminary objections "should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief." *Id.*

This Court's Order dismissing this action perhaps may have been inartful in the assertion that Ms. Gardner's claims are duplicative and/or may be resolved in the Partition Action. The Complaint's claims can be divided into two categories: (i) those claims that will be resolved through the partition and owelty process; and (ii) those claims that are utterly lacking in any legal merit. This opinion addresses both categories.

## C. Claims Relating to Ownership of the Property, if any, Will Be Resolved in the Pending Partition Action

Ms. Gardner broadly alleges that Mr. Gardner induced her to purchase the Property as an alternative to Mr. Gardner paying her rent for an apartment in Philadelphia. Ms. Gardner does not allege that she paid anything toward the

6

purchase of the Property or toward correcting any of the defects after settlement. Thus, to the extent Ms. Gardner has any claim related to her financial contribution to the Property, the Partition Action will resolve these issues. Partition of Real Property, governed by Pennsylvania Rules of Civil Procedure 1551 to 1574, provides the means for a co-tenant to divide a jointly owned property and distribute the proceeds. In the Partition Action, the Court has appointed a partition officer and the Property will eventually be sold. The Partition Action will resolve disposition of the Property and any issues related to the purchase or ownership. The parties will be entitled to appropriate distribution of proceeds from the disposition according to this Court's Order partitioning the Property equally between the parties. In sum, any claim for money, implicitly or explicitly incorporated into the claims in this case, related to the purchase and/or ownership of the Property can and will be resolved in the Partition Action.

## D. Ms. Gardner's Remaining Claims Were Properly Dismissed

Aside from the relief that Ms. Gardner may obtain in the Partition Action, Ms. Gardner does not state a cognizable separate cause of action for any of the eleven counts of her Complaint. Generally, any damages not related to the purchase of the Property either derive from Ms. Gardner living with water-related property defects, or the electrical fire that ultimately destroyed the home.

The Complaint, although extensive, fails to state a legal claim for any of the purported counts for a myriad of reasons. First, Mr. Gardner did not have a duty to Ms. Gardner as agent, attorney, or fiduciary, and the pleadings do not connect such

a duty to the damages she claims. Second, insofar as Ms. Gardner asserts that Mr. Gardner harmed her in other ways as a co-buyer, she does not plead any valid causes of action.

A.    Mr. Gardner Was Not Ms. Gardner's Agent, Attorney, and/or Fiduciary

This Court properly dismissed Counts One, Two, Five, and Nine because Mr. Gardner was not Ms. Gardner's agent, attorney, and/or fiduciary. The parties were simply a father and daughter co-purchasing a property. Ms. Gardner had access to (but did not read) the home inspection report that identified electrical issues. Ms. Gardner signed (but did not read) the Addendum requiring Mr. Wilkerson to correct those issues. There is no allegation Mr. Gardner prevented Ms. Gardner from reading, asking questions, or engaging in any other activity related to the purchase of the house. In sum, Mr. Gardner did not owe a duty to Ms. Gardner and he did breach any duty owed to Ms. Gardner, as discussed *infra*.

The law of agency in Pennsylvania requires "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000) (quoting *Scott v. Purcell*, 415 A.2d 56, 60 (Pa. 1980)). Such a relationship, if established, would create "a duty of loyalty to act only for the principal's benefit." *Id.* (quoting *Sutliff v. Sutliff*, 528 A.2d 1318, 1323 (Pa. 1987).

Mr. Gardner was a participant in this transaction and was not acting as an agent or attorney. Although he did possess superior knowledge based on his

8

professional experience as a real estate attorney, Mr. Gardner did not act as Ms. Gardner's attorney in the transaction, and he is not licensed as an attorney in Pennsylvania. The Gardners employed real estate professionals to assist with the transaction. A realtor prepared the contract, and a title company performed the settlement. In short, the parties were co-buyers of the property (although Ms. Gardner did not pay anything toward the property), each with the same access to the relevant information. Because Mr. Gardner did not owe Ms. Gardner a duty as agent or attorney, this Court properly dismissed Counts One and Two.

Additionally, Mr. Gardner did not breach a fiduciary duty to Ms. Gardner (Count Five) because no such duty existed. A fiduciary relationship may be established as a matter of law, as recognized in certain examples, but none of those specific examples apply here. *See Yenchi v. Ameriprise Financial, Inc.*, 161 A.3d 811, 820 (Pa. 2017) ("Principal and agent, attorney and client, guardian and ward, and partners are recognized examples."). Courts have recognized a fiduciary duty in circumstances "where the relative position of the parties is such that the one has the power and means to take advantage of, or exercise undue influence over, the other." *Id.* These cases are "necessarily fact specific" and "usually involve some special vulnerability" in one of the parties, such as when "on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed." *Id.*

Here, Ms. Gardner had no such vulnerability. Mr. Gardner's superior knowledge of real estate law is insufficient to create this imbalance. More to the

9

point, any such fiduciary relationship alleged by Ms. Gardner applies to the real estate transaction but is unrelated to any of the other damages Ms. Gardner claims. Any of the harm claimed by Ms. Gardner occurred *after* the transaction, when she continued to occupy the Property in the face of known risks. Time and again in the Complaint, Mr. Gardner conflates the concepts. The alleged damages stemming from Ms. Gardner's occupancy of the property were based on her own choices. There is no claim that Mr. Gardner forced Ms. Gardner to inhabit the property against her will. To the extent Ms. Gardner claims she was induced into signing the deed on the Property, the Partition Action will provide whatever relief, if any, she may be entitled to. Accordingly, the Court property dismissed Count Five, for Breach of Fiduciary Duty.

Finally, because no confidential relationship existed and Ms. Gardner did not exhibit any inferiority of mind or will, the Court property dismissed Count Nine (Undue Influence). A claim for undue influence requires a showing of influence obtained by "excessive importunity, superiority of will or mind, or by any other means constraining the grantor to do what he is unable to refuse." *Thomas v. Seaman*, 304 A.2d 134, 138 (Pa. 1973). As discussed *supra*, no such relationship existed here. Ms. Gardner was a consenting adult, exhibiting no inferiority of will or mind or an inability to refuse.

Even if Ms. Gardner somehow states a legally cognizable claim against Mr. Gardner for professional malpractice, which she clearly does not and cannot do, Ms. Gardner's complaint fails to satisfy the requirements of Pa. R. Civ. P. 1042.1, et

10

seq., regarding professional liability actions. Moreover, Ms. Gardner did not attach a certificate of merit, as required by Pa. R. Civ. P. 1042.3. This Court properly dismissed all of these claims.

B.     Ms. Gardner Does Not State Any Other Legally Viable Causes of Action

Ms. Gardner fails to state any cognizable path to the relief she seeks in the remaining Counts of the Complaint. In short, Ms. Gardner weaves a story that blames her father for many harms that befell her, but fails to connect any of those alleged harms to a legally viable claim.

Ms. Gardner's claims for fraud, which must be pled with particularity, alleged in Counts Three, Four, and Ten, requires "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Milliken v. Jacono*, 60 A.3d 133, 140 (Pa. Super. 2012). Count Eight, for negligent misrepresentation, requires similar proof of "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and; (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (1999).

Ms. Gardner alleges that Mr. Gardner knew about defects in the home and intentionally concealed them from her, creating a fraudulent conspiracy to convince

11

her to move to a house he knew was dangerous. Even if such a conspiracy existed, it would relate to the purchase of the home; Ms. Gardner does not allege how or why Mr. Gardner (or anyone) forced her to continue occupying the house after they purchased the home and discovered the defects. It is implausible to extrapolate from Ms. Gardner's allegations that Mr. Gardner *intended* to place her in harm's way and created a fraudulent mortgage scheme to do so.

Ms. Gardner claims intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") in Counts Six and Seven, respectively. Intentional infliction of emotional distress ("IIED") requires four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Jordan v. Pennsylvania State Univ.*, 276 A.3d 751, 775 (Pa. Super. 2022). Ms. Gardner seems to allege that Mr. Gardner's "extreme and outrageous" conduct occurred when he "knowingly plac[ed]" her, her housemate, and her pets "in a hazardous house." Such recovery is allowed "in only very egregious cases." *Id.* Despite Ms. Gardner's insistence, a father purchasing a home to co-own with his daughter and for her to live in cannot qualify as "extreme and outrageous" conduct. Count Six, therefore, does not satisfy the elements of IIED.

NIED applies only to four specific theories: "(1) situations where the defendant owed the plaintiff a pre-existing contractual or fiduciary duty (the special relationship rule); (2) the plaintiff suffered a physical impact (the impact rule); (3) the plaintiff was in a 'zone of danger' and reasonably experienced a fear of

12

immediate physical injury (the zone of dangerous rule); or (4) the plaintiff observed a tortious injury to a close relative (the bystander rule)." *Id.* at 774. As discussed *infra*, the parties did not have a contractual or fiduciary relationship, and Ms. Gardner does not present a cognizable claim for any of the other theories necessary to prove a claim for NIED. Therefore, the Court properly dismissed Count Seven.

Count Eleven for Breach of Agreement to Pay Rent asserts that Mr. Gardner has been in breach of his obligation to pay Ms. Gardner's rent ever since purchasing this home in October 2021. Initially, it is implausible to suggest that Mr. Gardner's offer to purchase a home for the parties to co-own, with Ms. Gardner having exclusive occupancy of the Property, was not a suitable replacement for his obligation to pay "rent" such that he was in breach as soon as they purchased the Property. But this even assumes that Ms. Gardner has a right to assert a claim related to the rental payments. Ms. Gardner is not a party to the agreement between Mr. Gardner and Ashley Gardner, his former wife, which provides for the rental payments. Indeed, through this claim, Ms. Gardner seems to provide a window into a wider family dispute; this entire litigation appears to be a proxy for Ashley Gardner to attack Ms. Gardner.

Finally, Ms. Gardner signed the occupancy agreement, demonstrating her intent to co-own the property in lieu of the rental payments. The occupancy agreement between Mr. Gardner and Ms. Gardner controls the obligations of the parties to this action and would supersede any other obligation. In sum, Ms. Gardner does not properly allege a breach of contract in Count Eleven.

**E.    Conclusion**

For all the foregoing reasons, this Court respectfully submits that the Superior Court should affirm this Court's Order Granting Mr. Gardner's Motion to Dismiss.

BY THE COURT:

_____
Joshua Roberts, J.

Dated: July 14, 2025

14